FILED
MAY 22 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAWN P.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

22-CV-00084-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff Dawn P.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 10) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on August 19, 2019, with an alleged onset date of August 19, 2018. (Administrative Transcript ["Tr."] 10, 175-78).  The application was initially denied on November 6, 2019, (Tr. 10, 65-76), and upon reconsideration on January 21, 2020. (Tr. 10, 77-89).  Plaintiff filed a written request for hearing on January 28, 2020. (Tr. 126-40).

An administrative hearing was conducted by Administrative Law Judge ("ALJ") Vincent Cascio via telephone on July 28, 2020, at which Plaintiff participated, along with her counsel.  (Tr. 27-53).  A vocational expert also testified.

On September 1, 2020, the ALJ issued an unfavorable decision.  (Tr. 7-26).  The Appeals Council denied review.  (Tr. 1-6).  This case followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The

Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A),

1382c(a)(3)(B). The Commissioner must make these determinations based on "objective

medical facts, diagnoses or medical opinions based on these facts, subjective evidence

of pain or disability, and . . . [the claimant's] educational background, age, and work

experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in

original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has

promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4),

416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and

whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the

claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless

of [his or her] medical condition or . . . age, education, and work experience." *Id.*

§§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful

activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.*

§§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether

the claimant has "any impairment or combination of impairments which significantly limits

[the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c),

416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1)*.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

At step one of the sequential analysis, the ALJ found the Plaintiff had not engaged in substantial gainful activity since August 19, 2019, the application date. (Tr. 12). At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, spondylolisthesis, cervical derangement, status post right ankle surgery, anxiety disorder, panic disorder, mild and major depressive disorder currently in remission. (Tr. 12-13). At step three, the ALJ found that none of Plaintiff's impairments met or equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 13). The ALJ then determined that Plaintiff retained the RFC to perform light work, except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes or scaffolds; she must avoid exposure to unprotected heights and hazardous machinery; and she is able to understand, remember and carry out simple routine and repetitive work-related tasks. (Tr. 15-20).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (Tr. 20). At step five, the ALJ found Plaintiff was able to perform work existing in significant numbers in the national economy, including work as a price marker, mail sorter and electrical assembler.  (Tr. 21). Accordingly, the ALJ concluded that Plaintiff was not disabled and, therefore, not eligible for SSI under the Act from August 19, 2019, the application date, through September 1, 2020, the date of the ALJ's decision. (Tr. 22).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ crafted Plaintiff's mental RFC using his own lay interpretation of the raw medical data.   The Court disagrees.

Plaintiff contends that the ALJ did not rely on any opinions when considering the mental portion of the RFC.  That is incorrect.

The ALJ found that Plaintiff has the RFC to understand, remember and carry out simple routine and repetitive work-related tasks. (Tr. 15). In support of this RFC finding, the ALJ relied on the medical opinion evidence, mental status examination findings and Plaintiff's reported functional abilities.

For instance, licensed mental health counselor, Alexis Perez, Plaintiff's treating source since 2017, opined that Plaintiff was limited but satisfactory in her ability to understand and remember very short instructions and carry out very short instructions. (Tr. 728). The ALJ found this portion of counselor Perez's opinion persuasive because it was supported by Perez's unremarkable mental status examination results. (Tr. 19, 566-665). Accordingly, in keeping with this portion of counselor Perez's opinion, the ALJ

determined Plaintiff can understand, remember and carry out simple routine and repetitive work-related tasks. (Tr. 15).

Next, the ALJ considered the opinion evidence from consultative examiner Dr. Christine Ransom, Ph.D. (Tr. 18). The ALJ found this opinion partially persuasive and chose to impose more restrictions than Dr. Ransom suggested. (Tr. 18). The ALJ noted Dr. Ransom's opinion that Plaintiff had only mild limitations was supported by her normal mental status examination, and was consistent with the unremarkable mental status examinations in the record.  (Tr. 18, *referring to* Tr. 556-665). Accordingly, the RFC is also supported by Dr. Ransom's opinion, showing that Plaintiff could perform at least the limitations outlined in the RFC finding. *See See Ramsey v. Comm' r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [the claimant's] RFC based on other evidence in the record") (emphasis in original)); *Lesanti v. Comm'r Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (doctor's less restrictive opinion constituted substantial evidence for RFC finding).

The ALJ also cited the unremarkable mental status examination results and treatment notes in formulating Plaintiff's mental RFC. (Tr. 17-20). *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes to formulate the RFC). Plaintiff had approximately 25 visits with counselor Perez from January 2019 through June 2020, which included visits prior to the application date, and her mental status examinations consistently revealed normal appearance, average eye contact, cooperative attitude, euthymic mood, full affect, clear speech, logical thought process, normal perception, normal thought content, no delusions, normal cognition,

intact insight and judgment and average intelligence. (Tr. 566-665). Treatment notes also reflect Plaintiff consistently reported to counselor Perez that she was doing okay or doing well, and that her progress was fair. (Tr. 566-665).

Next, the ALJ cited Plaintiff's self-reported activities and functional abilities. (Tr. 20). *See, e.g.*, *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x. 35, 36 (2d Cir. 2020) (upholding a finding that activities such as cleaning, doing laundry, cooking, and shopping tended to support a finding that the claimant was capable of concentrating and staying on task sufficiently to perform work activities); *Shawn C. v. Comm'r of Soc. Sec.*, No. 20-CV-1378-HKS, 2022 WL 17037624, at *3 (W.D.N.Y. Nov. 17, 2022) (finding that activities including caring for oneself, shopping, cleaning, and doing laundry supported a finding that claimant could perform unskilled work). During the October 2019 consultative examination with Dr. Ransom, Plaintiff reported she could dress, bathe and groom herself, manage money, read and care for her service dog. (Tr. 337). She also reported difficulty with house chores due to her back pain, not due to any mental health problems. *Id.* Plaintiff testified she goes out to shop, with difficulty, and she is able to shower, dress herself, cook, do dishes, watch television, and play games on her phone. (Tr. 39-40). She also testified that her memory is "pretty good" and she can pick things up quickly if someone is trying to teach her something new. (Tr. 43-44).[3]

In sum, based on the above evidence, the Court finds that there is substantial evidence to support the ALJ's mental RFC finding and that contrary to Plaintiff's argument, the ALJ did not rely on his own lay opinion in formulating Plaintiff's RFC. *See*

---

[3] The ALJ also relied on the opinions of State agency psychiatric consultants, Dr. K. Lieber-Diaz, Psy.D. and Dr. M. Juriga, Ph.D., in formulating Plaintiff's mental RFC.

*Schillo v. Kijakazi*, 31 F.4th 64, 79 (2d Cir. 2022) (RFC passed the substantial evidence test where the ALJ cited medical findings and course of treatment); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (consultative examiner's opinion constituted substantial evidence for RFC finding).  Accordingly, the ALJ must be affirmed.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No.10) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    May 21, 2025
          Buffalo, New York

                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge